UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRIAN COREY YEOMANS, | No.  2:23-cv-1806 SCR |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner), denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§1381-1383f.[2] For the reasons that follow, the undersigned grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

---

[1]  Carolyn W. Colvin became the Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.
[2]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); *Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

## I. PROCEDURAL BACKGROUND

Plaintiff applied for disability benefits in March or May 2020, alleging a disability onset date of June 8, 2019.[3] Administrative Record (AR) 201.[4] The application was disapproved initially, AR 74-88, and on reconsideration (AR 90-110). On October 28, 2021, administrative law judge ("ALJ") Serena S. Hong presided over a hearing on Plaintiff's challenge to the disapproval. AR 46-73 ("Hearing Transcript"). Plaintiff was present and testified. AR 48-52, 54-61. He was not represented by an attorney at the hearing. AR 50-51. His mother, Kim Lewis, and a vocational expert, Kathleen Macy-Powers, also testified at the hearing. AR 47-48, 62-71.

On March 24, 2022, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 11-28 ("ALJ Decision"). On May 5, 2023, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. AR 3-8. On July 21, 2023, the Appeals Council denied Plaintiff's request to reopen and change the decision, again leaving the ALJ's decision as the final decision, but gave Plaintiff more time to file a civil action. AR 1-2.

On August 24, 2023, Plaintiff filed this action. ECF No. 1. The parties' filed cross-motions for summary judgement based on the AR filed by the Commissioner. ECF 7 (Plaintiff's summary judgment motion), 11 (Commissioner's summary judgment motion and opposition to Plaintiff's motion). Plaintiff did not file an opposition to the Commissioner's cross-motion for summary judgment or a reply to the Commissioner's opposition to his own motion.

## II. FACTUAL BACKGROUND

Plaintiff was born in 2001 and was 18 years old when he filed his application, AR 26, 74, 201, 19 years old at the time of the ALJ hearing, AR 54, and 20 years old at the time of the ALJ's decision. AR 20. Plaintiff has a high school education. AR 20, 26, 55, 119, 222. He alleged disability based on anxiety, depression, and audio, visual, and tactile hallucinations. AR 221. He

---

[3] Several documents within the Administrative Record (AR) indicate that Plaintiff filed for disability benefits on March 9, 2020, ECF No. 10-1 at 18, 78, 93, 95, 115, 157, however the only application in the AR is dated June 1, 2020, and refers to an application date of May 4, 2020. The only application in the AR is for DIB and not SSI but the ALJ decision reviews the denial of SSI.
[4] The AR is at ECF No. 10-1.

2

stated and testified that he has never worked.  AR 56, 221.

## III.  STANDARD OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The Court will not reverse an erroneous decision if the error was harmless. In this context, an error is harmless only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  SUBSTANTIVE LAW

A claimant is "disabled" if "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not,

4

the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled."); *Bowen*, 482 U.S. at 146 n. 5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since March 9, 2020, the application date (20 CFR 416.971 *et seq*.). AR 16.
>
> 2. [Step 2] The claimant has the following severe impairments: obesity, obstructive sleep apnea (OSA), diabetes mellitus (DM), post traumatic stress disorder (PTSD), anxiety, depression, and learning disorder (20 CFR 416.920(c)). AR 17.
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 17.
>
> 4. [Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except cannot climb ladders, ropes and scaffolds and can perform other postural maneuvers such as stooping, crouching and crawling on a frequent basis. The individual must avoid concentrated exposure to hazards such as unprotected heights and moving machinery. The individual is limited to performing simple, repetitive tasks with only occasional public contact. The individual would work best in an environment that is task oriented and not production paced. AR 19-20.
>
> 5. [Step 4] The claimant has no past relevant work (20 CFR 416.965). AR 26.
>
> 6. [Step 5] The claimant was born on November 6, 2001, and was 18 years old, which is defined as a younger individual age 18-49, on the date the application as filed (20 CFR § 416.963). AR 26.
>
> 7. [Step 5, continued] The claimant has at least a high school education (20 CFR 416.964). AR 26.

5

8. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). AR 27.

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 9, 2020, the date the application was filed (20 CFR 416.920(g)). AR 27.

## VI. ANALYSIS

Plaintiff argues that the ALJ erred by not properly considering the mental listings, ECF No. 7 at 7; and by ignoring the vocational expert's testimony that an individual could not gainfully work under the circumstances described by Plaintiff's mother, *id.* at 8.[5] In substance, this is an argument that the ALJ erred at Step 3 (mental listings) and at Step 4 (determination of residual functional capacity). Additionally, Plaintiff seeks reconsideration of the ALJ's decision based on "newly obtained evidence . . . that was not addressed prior, that directly relates to the Commissioner's determination." *Id.* at 13.

**A. The ALJ Erred in Considering the Mental Listings**

At Step 3, the relevant question is whether Plaintiff's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. If so, the claimant is disabled. If not, then the analysis proceeds to step four. Here, at step three, the ALJ determined that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, and 12.15." AR 17. Plaintiff argues that the ALJ did not properly consider whether Plaintiff met the criteria under these listings. ECF No. 7 at 7, 74-83.

The evaluation process for listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders)

---

[5] It appears Plaintiff's mother prepared or helped prepare Plaintiff's motion for summary judgment, as most of the statements are written from Plaintiff's mom's perspective and, in addition to Plaintiff's signature, she signs the motion as "Mother/Rep/Advocate," ECF No. 7 at 13, and "Mother/Advocate/Representative/Kaiser Appointed Case Manager," *id.* at 86-87.

are the same. The evaluation for listing 12.05 (intellectual disorder) is considerably different. However, under both processes, for an impairment to match a listing, "it must meet *all* the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

### 1. Listings 12.04, 12.06, and 12.15

#### a. Criteria

Listings 12.04, 12.06, and 12.15 each consist of three "paragraphs" captioned "A," "B," and "C," which have specified requirements. For those listings, the mental disorder must satisfy the requirements of both Paragraphs A and B, *or* the requirements of both Paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A2. Because the ALJ did not address Paragraph A for listings 12.04, 12.06, or 12.15, and instead found Plaintiff failed to satisfy Paragraphs B and/or C, the Court need not discuss Paragraph A criteria.

To meet Paragraph B criteria under 12.04, 12.06 and 12.15, a claimant's mental disorder must result in "extreme limitation of one," or "marked limitation of two" of the four following areas of mental functioning:

1. Understand, remember, or apply information;
2. Interact with others;
3. Concentrate, persist, or maintain pace;
4. Adapt or manage oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A2b. Marked limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00F2d. Extreme limitation means "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00F2e. Extreme limitation is the last point on the scale and it "represents a degree of limitation that is incompatible with the ability to do any gainful activity." "The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4).

To meet Paragraph C criteria under listings 12.04, 12.6, and 12.15, claimant's mental

7

disorder must be "serious and persistent." To be "serious and persistent," "there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that":

1. "[claimant] rel[ies] on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder"; and
2. "despite [claimant's] diminished symptoms and signs, [claimant has] achieved only marginal adjustment."

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00G2b, 12.00G2c. "'Marginal adjustment' means that [claimant's] adaptation to the requirements of daily life is fragile; that is, [claimant has] minimal capacity to adapt to changes in environment or to demands that are not already part of the [claimant's] daily life." *Id.* § 12.00G2c. This is established by evidence that "changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning." *Id.*

> For example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of [claimant's] mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time."

*Id.*

### b. Analysis

With respect to all four Paragraph B criteria, the ALJ found that Plaintiff had *moderate limitations*. AR 17-18. Moderate limitation in an area means "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2c. Plaintiff only disputes the ALJ's determination as to the third and fourth areas of Paragraph B: "Concentrate, persist, or maintain pace" and "Adapt or manage oneself." ECF No. 7 at 74-77.

The ALJ also determined that Plaintiff did not meet the Paragraph C criteria. It is unclear whether Plaintiff also disputes that Plaintiff meets the criteria under Paragraph C. However,

because Plaintiff's mother makes a reference to Plaintiff's "minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life" (*id*. at 80), the Court also addresses Paragraph C criteria.

### i. Paragraph B – Concentrating, Persisting or Maintaining Pace

Concentrating, persisting, or maintaining pace "refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E.3.  In determining that the Plaintiff had moderate limitation for concentrating, persisting or maintaining pace, the ALJ found that: although Plaintiff's mother testified that he had auditory and tactile hallucinations and PTSD flashbacks, at mental status exams Plaintiff denied all hallucination.  The ALJ also found the record reflected that Plaintiff typically had adequate attention and concentration because he "was given an allowance and could go to the store or mall with his friends as long as he was not symptomatic," he was preparing for a driver's test, livestreamed video games, and played SIMS on the computer.  AR 17.

Plaintiff's arguments regarding this criterion can be characterized as taking issue with the evidence considered.  First, Plaintiff argues that the ALJ should *not* have considered Christy Webster's therapy notes—that Plaintiff reported no visual or audio hallucinations—because (1) Plaintiff viewed her as a friend rather than a therapist and (2) his therapist was not always able to complete mental status exams because the sessions were over the phone.  ECF No. 7 at 7. However, the Court is unaware of any legal support for the first reason and rejects the second reason because the ALJ did not refer to Christy Webster's therapy notes regarding her medical opinion based on her *completion* of mental status exams of Plaintiff.  Instead, the ALJ referred to Christy Webster's therapy notes as an additional source of Plaintiff's self-reported symptoms, which in this case was that Plaintiff was no longer suffering from hallucinations.  *See* AR 17, 24, 26. As such, whether Christy Webster *completed* the mental status exams is irrelevant, and the ALJ did not commit error in considering Christy Webster's therapy notes.

Second, Plaintiff seems to suggest that the ALJ either did not consider or should have given more weight to Plaintiff's mother's statement that Plaintiff does not know real from not real and therefore cannot be relied upon to say whether he is having or has had a hallucination.  ECF

No. 7 at 74; *see also* AR 216.  However, the only other reference in the record to hallucinations after the alleged onset date, June 8, 2019, is a note from Dr. Ferro on July 21, 2020, indicating that Plaintiff reported he had "a dream 1-2 weeks ago in which his dream yielded a hypnopompic hallucination," AR 627.  All other evidence, including Plaintiff's mother's statements about Plaintiff's symptoms, substantially support the ALJ's finding that Plaintiff was not suffering from hallucinations during the alleged period of disability, and that his hallucinations were an issue of the past that had improved or resolved for the most part by June 2019.  AR 119, 345, 364, 368, 378, 440, 449, 457-58, 470-72, 478-79, 559, 561, 611, 613, 615, 620, 624, 626, 630, 637, 662, 669, 672, 674, 677, 681, 684, 686.

Third, Plaintiff also argues that the ALJ mischaracterized Plaintiff's ability to go shopping.  *See* ECF No. 7 at 82.  She explains that he cannot go alone; she needs to stay close by and be available to take him home on a moment's notice.  *Id.*  This argument has merit.  The Court is concerned that the ALJ's mischaracterization of Plaintiff's ability to receive "an allowance and . . . go to the store or mall with his friends as long as he was not symptomatic" constitutes error and that such error was not harmless.  To start, the ALJ cites to a source that does not support her conclusion.  AR 17 (citing 16E – 3rd Party Function Report – Adult, dated 2/22/2021, from Kim Lewis – Mother, located at AR 280-90).  Indeed, Plaintiff's mother's 2021 third-party report states, "He does not go shopping."  AR 286.  In addition, in reviewing the entire record, the Court found evidence that supports Plaintiff's argument and conflicts with the ALJ's statement.  AR 258 (9E – 3rd Party Function Report – Adult, dated 06/13/2020 to 06/13/2020, from Kim Lewis – Mother indicates that Plaintiff was "[g]iven an allowance and could go to the store or mall with his friends" *before* his "illness, injuries, or conditions began.").  Because the ALJ also relied on this mischaracterization of evidence to find that Plaintiff's daily activities undermined his "statements concerning the intensity, persistence and limiting effects of these symptoms," AR 26, the Court is concerned that the ALJ's review of the entire record may have been tainted by her error, especially where there is substantial evidence showing that Plaintiff

////

////

10

could not leave the house without his mother. *See* AR 95, 246, 248, 257, 258, 286, 287, 298, 299.[6]

### ii.     Paragraph B – Adapting or Managing Oneself

"This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E.3. Examples demonstrating this ability include: "[r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." *Id.* In Plaintiff's case, the ALJ found Plaintiff had moderate limitations for adapting or managing oneself based on the following: Plaintiff's mother testified that Plaintiff sometimes acted like a two-year-old; Plaintiff's mother provided a statement that Plaintiff forgot to bathe and she prepared his meals; Plaintiff reported that he helped around the house after his mother's surgery and that he had some cooking skills. AR 18.

Plaintiff presents numerous reasons to "dispute" the ALJ's finding that Plaintiff is only moderately limited in this area. ECF No. 7 at 75-77, 83. She offers her own statements made to support a finding of a greater limitation in this area. It is unclear whether Plaintiff's position is that the ALJ failed to consider this evidence or improperly rejected this evidence. However, it is apparent from the ALJ's decision that, in making a decision, the ALJ considered the content of several of Plaintiff's mother's statements—particularly concerning Plaintiff's childish behavior, hygiene issues, limited cooking skills, and ability to provide *some* assistance to his mother while she recovered from surgery. Moreover, the ALJ was not required to discuss every piece of evidence and/or statement made by Plaintiff's mother in making her decision because there is no

---

[6] This error can be traced back to the initial disability determination and the agency's reconsideration decision. AR 77 ("ADL MOTHER COMPLETED doesn't drive but is learning, cannot go out alone or handle money. *but was given an allowance and could go to the store or mall with his friends-* as long as he is not symptomatic he can do most things" (emphasis added)), 95 (same).

11

indication the ALJ rejected any of this evidence. The Ninth Circuit has "repeatedly held that an ALJ need not discuss all evidence presented to her. Rather, she must explain why significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193-95 (9th Cir. 2022) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal quotation marks omitted).

However, the ALJ's determination that that Plaintiff is only moderately limited as to adapting and managing oneself is not supported by substantial evidence. The record is replete with evidence showing plaintiff's persistent struggles to successfully engage in everyday tasks. Indeed, the ALJ noted Plaintiff's mother's testimony that Plaintiff sometimes acted like a two-year-old and Plaintiff's mother's statement that Plaintiff forgot to bathe and she prepared his meals. AR 18. There is significant other record evidence of similar, ongoing limitations. For example, Plaintiff's mother stated that he "needs help with his hair, grooming"; loses track of times and days; that he cannot clean his room at one time because "he becomes anxious" and "loses track of time," thinking that he just cleaned his room when in fact he had not cleaned it in a week or more; often must defer housework for days when symptomatic; only goes out once or twice a month, and cannot go out alone; needs to be reminded of doctor and therapist appointments; "takes a long time to make simple decisions"; "gets confused" when told to do things. AR 285-290. In terms of *positive* functionality in this realm, the ALJ noted only that Plaintiff helped around the house after his mother's surgery and had some cooking skills. AR 18.

As explained above, examples of adapting and managing oneself include the following: "[r]esponding to demands; adapting to changes; managing your psychologically based symptoms . . . setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E.3. Despite the evidence of Plaintiff's significantly limited functionality, some of which the ALJ cited, the ALJ found Plaintiff only moderately limited in his area. Although an ALJ "need not discuss all evidence presented," the ALJ may not ignore substantial, contradictory evidence and must "explain why significant probative evidence has been rejected." *Carter v. Colvin*, 651 Fed. Appx. 721, 723 (9th Cir. 2016) (quoting *Vincent ex rel. Vincent v. Heckler*, 739

F.2d 1393, 1394–95 (9th Cir. 1984)); *see also Penny v. Sullivan*, 2 F.3d 953, 957 (9th Cir. 1993) ("our review of the record as a whole indicates that the ALJ ignored substantial evidence on the overall record indicating that [claimant] was disabled within the meaning of the Act"). Substantial evidence did not support the conclusion that Plaintiff is only moderately limited as to adapting and managing oneself.[7]

### iii.    Paragraph C Criteria

The ALJ determined that Plaintiff did not meet Paragraph C criteria because:

> The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's life.  Furthermore, the evidence does not reveal that the claimant has participated in any work programs or required the use of a job coach or supervisor; received comprehensive 24/7 wrap around mental health services; resided in a halfway house or in another highly supportive living arrangement; attended or been referred to a partial hospitalization program; or required assistance from mental health workers to meet physical needs.

AR 18.  The second part of this passage, starting with "[f]urthermore" appears to refer to psychosocial supports as described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00D.  Psychosocial supports can be relevant to both requirements under Paragraph C.  Ongoing psychosocial support(s) to diminish the claimant's symptoms and signs of mental disorder can satisfy the first requirement.  *Id.* § 12.00G2b.  The second requirement, only marginal adjustment, can be established by inability "to function outside your home or a more restrictive setting, without substantial psychosocial supports," *id.* § 12.00G2c.

From what the Court can discern, Plaintiff argues that he satisfies Paragraph C criteria because (1) "[a] highly structured environment has been created in the claimant's home by eliminating all but minimally necessary contact with the world outside the claimant's living space," and (2) he "has minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." ECF No. 7 at 17, 80.

The Court agrees with Plaintiff that there is a problem with the ALJ's analysis here.  The

---

[7] The Court notes that the ALJ's findings were consistent with the agency's psychological consultant, P. Davis Psy. D., who determined Plaintiff had moderate limitations in all areas under Paragraph B, *see* AR 80.  However, it is not clear why this determination was made in light of other of the consultant's findings, including that "claimant's [] condition is severe[.]"  AR 81.

ALJ failed to examine the most relevant criteria—and accordingly the most relevant evidence—as it pertains to Plaintiff's situation. The ALJ did not mention the examples regarding psychosocial supports that apply most clearly to Plaintiff's situation: "You receive help from your family members or other people who monitor your daily activities and help you function. For example, family members administer your medications, remind you to eat, shop for you and pay your bills, or change their work hours so you are never home alone." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00D1a-b. By the same token, the ALJ did not engage with the evidence showing that Plaintiff requires this type of psychosocial support from his mother. AR 285-290. An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

### c. Conclusion

For the reasons provided above, the ALJ committed error with respect to analysis of the Paragraph B and C criteria for Listings 12.04, 12.05, and 12.15.

### 2. Listing 12.05

For listing 12.05, the "mental disorder must satisfy the requirements of either paragraph A or paragraph B," which are distinct from paragraphs A and B for the listings described above. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00A2, 12.00A3. "Each paragraph requires that you have significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and evidence that demonstrates or supports (is consistent with) the conclusion that your disorder began prior to age 22." Id. at § 12.00A3.

Paragraph A under 12.05 requires the following three criteria:

(1) Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

(2) Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

(3) The evidence about your current intellectual adaptive functioning and about the

14

history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.05A.

Paragraph B under Listing 12.05, like Paragraph B discussed above, *requires* "an extreme limitation of one, or marked limitation of two, of the areas of mental functioning." However, Paragraph B under Listing 12.05 *additionally* requires:

[1] Significantly subaverage general intellectual functioning evidence by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

[2] The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

The ALJ found the Paragraph B requirements "not met because the record does not contain a full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or a full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence." AR 19. In fact, it appears the record does not contain any IQ score at all. While it is not clear whether Plaintiff contests the ALJ's determination under Listing 12.05, that determination was clearly supported by substantial evidence.

### B. Lay Witness Testimony Regarding Residual Functional Capacity ("RFC") & Vocational Expert Testimony Regarding RFC

Plaintiff argues that the ALJ committed error in determining Plaintiff's RFC because the the ALJ did not consider all evidence, *including her testimony*, to determine Plaintiff's capacity to work despite his impairments. Specifically, Plaintiff argues that had the ALJ considered her

testimony regarding Plaintiff's limitations, the ALJ would have determined that Plaintiff could not work, based on the vocational expert's testimony. ECF No. 7 at 8; see AR 69 (vocational expert testified that there would be no jobs for an individual "[i]f you assume the same individual as in hypothetical number one but add to that the person would be off task or non-productive for any number of reasons, that may be a need for an additional break, a lack of concentration, and need to step away from the workplace or otherwise be absent, any number of reasons the individual would be off task or non-productive 20 percent of the workday or workweek, would there be jobs?").

Plaintiff is correct that the ALJ appears to have not credited her testimony. Instead, the ALJ articulated an RFC based solely on the agency's psychosocial consultant's, Dr. Davis', conclusions that with respect to mental limitations: Plaintiff "is limited to preforming simple, repetitive tasks with only occasional contact;" and Plaintiff "would work best in an environment that is task oriented and not production based." *See* AR 20, 25, 86-87.

According to new regulations, an ALJ is "not required to articulate how [they] considered evidence from *nonmedical sources* using the requirements" applicable to medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c (emphasis added). Nonmedical sources include "[f]amily members, caregivers, friends, neighbors, employers, and clergy." 20 C.F.R. § 404.1502(e)(4). In the Ninth Circuit, "[i]t is an open question whether the new regulations affect the longstanding requirement in the Ninth Circuit that an ALJ must give germane reason for rejecting lay witness testimony." *See Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *2-3 (9th Cir. Nov. 7, 2024). Some judges in this Court, however, have concluded that under the new regulations an ALJ is no longer required to give germane reason for rejecting lay witness testimony. *See Bermundez v. Comm'r of Soc. Sec.*, No. 1:22-cv-1465 EPG, 2023 WL 7092159, at *7 (E.D. Cal. Oct. 26, 2023); *Evans v. Comm'r of Soc. Sec.*, No. 2:22-cv-0435 KJN, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023); *Neri v. Comm'r of Soc. Sec.*, No. 1:21-cv-1235 SAB, 2022 WL 16856160, at *7 (E.D. Cal. Nov. 10, 2022).

Regardless of what scrutiny should be applied to the ALJ's apparent failure to credit Plaintiff's mother's testimony, the ALJ engaged at length with the record evidence in reaching an

RFC determination that was supported by substantial evidence. Accordingly, any error in this regard appears harmless.

### C. New Evidence

Plaintiff also seeks to have the Court review extensive new evidence to evaluate the ALJ's determination. The Court has already determined that the ALJ erred at Step 3 and, as explained below, will order remand. Accordingly, the Court need to determine whether that new evidence should be considered in the instant lawsuit. Plaintiff may seek to present that new evidence to the ALJ on remand.

### VII. CONCLUSION

At Step 3 the ALJ mischaracterized an important piece of evidence and failed to support other determinations with substantial evidence. The Court is unable to conclude that these errors were harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination") (cleaned up). When a court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). That is what the Court will do here.

The court accordingly GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and REMANDS this case to the Commissioner for further proceedings on Plaintiff's disability claims consistent with this order. The Clerk of the Court is directed to enter judgment in favor of Plaintiff and close this case.

SO ORDERED.

DATED: January 9, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE